To our sixth case, Baines v. Walgreen Company. Ms. Scott. May it please the Court, my name is Amy Scarr and I represent plaintiff appellant Regina Gwynne Baines. Summary judgment is inappropriate in this case because a reasonable jury could infer from Ms. Baines' evidence that Walgreens retaliated against her. District Manager Michelle Birch made the decision to reject Ms. Baines for employment at Walgreens and then she lied about it. Her dishonesty entitles a jury to infer that she acted with a retaliatory motive. In addition, there is other evidence in this case that Ms. Birch had animus toward Ms. Baines. In rejecting Ms. Baines for employment, Ms. Birch overruled the pharmacy manager's hiring authority and desire to hire Ms. Baines. This was a deviation from Walgreens' standard hiring practice because the pharmacy manager, Ms. Rees, had authority to hire whom she wanted, usually, in the pharmacy. And Ms. Rees wanted to hire Ms. Baines because she had a lot of Walgreens experience, she knew the system well, Ms. Rees liked her and thought she would be a good fit with her team. In addition, after Ms. Baines filed her first EEOC charge, District Manager Birch and several other managers met with Ms. Baines to discuss her EEOC charge. In this meeting, Ms. Birch's supervisee, Mr. Smith, made hostile and intimidating remarks to Ms. Baines with regard to her EEOC charge. A reasonable jury could infer that Mr. Smith was speaking for Ms. Birch, for the other managers, and for Walgreens when he expressed this hostility. At that meeting, was Mr. Alani also present, according to Ms. Baines' testimony? No, he was not. I thought she testified that he had told her back in 2007 he didn't want to work around her because of the EEOC case. She did testify to that. He went to a different meeting, not that meeting. The inference is that someone told Mr. Alani, or he learned of her charge. Sorry, I misunderstood. Thank you. Ms. Birch's silence in that meeting with regard to these hostile remarks acted as an endorsement of those remarks. No one contradicted Mr. Smith's intimidating and hostile remarks regarding Ms. Baines' EEOC charge. There is also evidence that Walgreens took actions to erase evidence that Ms. Baines had ever been interviewed. Her interview scores are missing. In discovery, Walgreens produced a list of the candidates who had been interviewed for the pharmacy technician position. Ms. Baines' name isn't even on the list, let alone her scores. Walgreens has never explained what happened to those scores. The inference is that the scores were destroyed because Walgreens' own employees testified that the interview scores were entered into their computer system after every interview right away. There was never any reason not to put the scores into the computer. They always did this. The pharmacy manager said she took notes during interviews, including Ms. Baines' interview, and that she only threw her notes away after scores were entered into the computer. And she threw away her notes from Ms. Baines' interview. So the reasonable inference is that those scores were entered into the computer. We do not have those scores today. Walgreens has never produced them and never explained what happened to them. Again, the reasonable inference is that they were destroyed. When you look at that evidence in combination with the fact that the pharmacy manager made false statements to the EEOC and denied even interviewing Ms. Baines or knowing who she was, there is enough evidence for the suggestion that Walgreens tried to destroy evidence of Ms. Baines' interview and her very existence to cover up for retaliation. Ms. Scarr, can I ask you a couple of factual questions? Yes. Ms. Birch, in 2014, at the time of this hire, was district manager. Do you know how broadly those responsibilities extended? I can ask Walgreens. Probably Counsel for Walgreens knows better. I think she had quite a few responsibilities. Multiple stores? Yes. For the whole store operation or just pharmacy? I believe for the whole store operation. In the process that we're talking about here, was it just one position that was being filled or were there multiple positions? I believe it was one position, a pharmacy technician. However, I do think there were continuing interviews over a period of time because we got a list from June of 2014 through August of 2015 of everyone interviewed for a pharmacy tech position. So the interviews continued over time. Okay. So did Ms. Martin, for example, was she hired for the position that Ms. Baines wanted or is that uncertain? I believe so. I can't say with 100% certainty. The timing of their two applications and interview was very close, within a week or two. Okay. I do think it's important to address the time interval issue in this case. As this court has said repeatedly in many cases, the time interval between a protected activity and adverse employment action is not dispositive. Interestingly, this is a failure-to-hire case. It's not a termination case like the cases cited by Walgreens in its brief, and the difference is significant. Regina Baines was gone from Walgreens between the time of her last EEOC charge and the time that Walgreens failed to hire her. Therefore, Walgreens had no opportunity to retaliate against her during that time interval, and it took the first opportunity it had when she applied again in 2014 to retaliate against her. What the time interval represents in this case is really an issue of credibility. Is Ms. Birch credible when she says that she didn't remember Ms. Baines' EEOC charges at the time she applied in 2014? The termination cases cited by Walgreens involve employees who had continuing relationships with their employers before they were terminated or laid off, so their problem is explaining why there are foregone opportunities for the employer to retaliate. That is not the situation here. And remember, Ms. Baines did file two retaliation complaints after her first EEOC charge, so the court should not assume that Walgreens did not retaliate against her. There is a substantial amount of evidence and conflicts in the record, credibility issues that entitle Ms. Baines to a trial. I think the cumulative effect of the evidence is to present a picture of retaliation. We ask that the court reverse the lower court summary judgment decision and remand the case for trial. Thank you, Ms. Keller. Ms. Linder? Thank you, Your Honor. May it please the Court, my name is Laura Linder, and I represent the Appellee Walgreen Company. Plaintiff's appeal boils down to one central argument. She claims, based solely on the testimony of her cousin, that the cousin had with Hannah Reese, that Ms. Birch made this hiring decision. She says from that, a jury can infer that Ms. Birch was not truthful about her role in the decision. But from that potential fact issue, she then argues, a jury could then infer that Birch acted based on some retaliatory animus that she has been apparently harboring for more than seven years, based on charges filed seven years ago. The only thing that this record establishes at most is there's a fact issue as to who made the decision. But there is no basis to find a fact question on causation, which is whether but for Ms. Baines' charges in 2007 and 2009, she would have been rehired by Walgreens. And there is no evidence to establish that retaliatory link. If you look at Ms. Martin's testimony, she says, Hannah Reese told me she liked Ms. Baines. But she says, Ms. Reese did not tell her, I don't know why I couldn't hire her. She didn't say there was any discussion of charges. In fact, Ms. Reese had no knowledge of Ms. Baines' charges until the EEOC charge that underlies this matter. So you're, am I correct then, at this point, you agree that Martin's testimony is admissible, since both layers satisfy exceptions to the hearsay rule? We don't agree that both layers satisfy the exception, because you have two different, you have two statements. You have Ms. Martin's testifying about what Ms. Reese told her, which is, I wanted to hire Ms. Baines. I liked her a lot. That could fall within the 801 D2D exception, because it's within the scope of Reese's employment. But I don't think Reese stating what Birch told her, and Martin repeating that, still falls within 801 D2. It's not even a statement. It's just a command. If Reese were on the witness stand, she could testify as to what Birch had told her, correct? Don't hire her. That's not a statement about the world. That's a command. Her words were, I was told that I couldn't hire her. She's repeating a statement. I couldn't hire her. That's not a command from the district manager? I don't think it was testified to that effect. Really? Yes. I think she was repeating, again, what her boss, she claims her boss said. Whether that falls within a command, I still think it's double hearsay. Reese could testify. Reese could get on the stand and say, my boss told me I couldn't hire her. Right. She can say that. But Martin can't say, this is what Reese. You just told us, though, that Martin can testify about what Reese said within the scope of her responsibilities for hiring here. Right. That's an agent, right? And what that agent said was, I was commanded not to hire Baines. So that comes in. So that's got to be in. And once you've got a fact issue about who made the decision, you've also got fact issues about the honesty of the people denying who did or did not make the decision, right? But that's where you don't have enough of a fact question, and you don't have evidence of a retaliatory mindset. No, you have Reeves and dishonesty and an inference of unlawful intent. Particularly given all the other evidence, the deviation from standard procedures, the disappearance of the scores, and so on. So with respect to the deviation from the hiring practices, the only evidence of that is still what the cousin's testimony is. There's no management testimony. That's admissible evidence, correct? Assuming it's a ---- How broad were Ms. Birch's responsibilities in 2014? As a district manager, she's responsible for a group, a big district of stores. Ten, 20, 30 stores? Probably 20, 30 stores. Okay. And her primary responsibility is retail. Pharmacy only or the stores entirely? Stores entirely, but they're separate pharmacy management. Right. Her primary responsibility is the retail side of the store operations. So the retail district manager is intervening on one entry-level pharmacy tech in one store. Is that right? Isn't that pretty unusual? And that's not the testimony, though, of Reeves, Alani, and Birch. I'm not asking what the ---- I'm not asking your version. I'm asking the summary judgment version. If you accept the cousin's testimony, yes, then Ms. Birch told Ms. Reeves she couldn't hire her. And that would be highly unusual. It probably would be unusual. In fact, Ms. Birch said, I don't get involved in hiring pharmacy technicians. I hire the managers who are then responsible for managing. So, yes, that would be unusual. But what we don't have is any explanation, then, for why Birch would have gotten involved. It is not fair to assume that that is based on a retaliatory mindset of something that occurred seven years ago. Why else would she have gotten involved? We have to assume that she was for summary judgment purposes. Who knows? Maybe she talked to Alani. Maybe she talked to Alani. Maybe she looked at her employment records. I mean, that's not Walgreens' version of events, of course, so we can only speculate. That's your problem, right. Right. It's not our version of events. But maybe she looked at Ms. Bain's employment records and found what Mr. Alani reported, which was I didn't think she was a very good pharmacy tech, so I wouldn't bring her back if I were you. So we don't know. We don't know what Birch might have relied on. And when you go back, I mean, I think two things are important to factor in is the passage of time here, both in terms of, you know, animus and even memory. Ms. Birch testified, and it's not been discredited other than by this one statement, that she didn't remember those charges. You say it's not been discredited except for this one statement. It's summary judgment. Why would it be so bad to send this case to trial, given we have those conflicts? Because there's a but-for causation standard.  You don't have enough, then, for a reasonable jury to say, ah-ha, it could have been. So address Reeves, the inference that Reeves said we have to indulge. And what Reeves said is, in appropriate circumstances, the trier fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Circumstantial evidence here is dishonest explanation, we must assume for purposes of summary judgment, missing scores, extraordinary intervention by district manager into entry level hire. Right? We don't have to. Missing scores is actually not something you can infer that from, because there's no evidence that Birch was involved in that. Reeves was the one who did the interview. And Reeves didn't even know about the charges. So you cannot infer that Reeves entered the charges and destroyed them, because Reeves didn't have any knowledge. When were the scores first requested? The scores, so the missing scores came up in connection with the underlying EEOC charge in this matter when they went back and said, who is this Regina Baines? Did she apply? When did she apply? And the company didn't find the scores and know that she actually applied. So it was not discovered until later. We don't know whether they were ever inputted, who was responsible for inputting them, if they were inputted, who might have taken them out. There's absolutely no explanation as to those scores. But what we do know is Miss Reeves was the interviewer, and she had no knowledge of the prior scores. So the theory that this was part of some cover-up by Miss Reeves to cover up Miss Birch's retaliation can't be established because Reeves didn't even know about those charges or whether Miss Birch knew about them. The issue back to Reeves, though, is the explanation dishonest. I don't think you can include there's a dishonest explanation as to the reason for not hiring her. Even if you assume Birch might have made the decision, there is no evidence in the record as to why. So I don't think you can then jump to the conclusion, as the district court found, that it must have been retaliatory because if you go back to 2007, counsel referenced these comments by Tavaria Smith, who was the pharmacy supervisor at the time. He's not tied to the 2014 decision. What the record shows is at that time, while Birch was present, Birch allegedly asked Miss Baines what she wanted. Well, that's a reference to a resolution. That's not a reference to any kind of animosity. There's no evidence that Miss Birch agreed with what the co-worker is alleged to have said. She said, well, what do you want to resolve this? That's an olive branch. That's not, we don't want to hear about it. Go away. And that's evidence in the record as to Miss Birch's mindset at that time. And subsequent to that, there's no evidence as to what Miss Birch, whether she continued to harbor, had any animus in 2007 in the first place, and whether she continued to harbor this animus for seven years and used the opportunity seven years later to denounce Miss Baines at jail. I see that my time is up. Unless there's further questions, we rest on our brief. Thank you. Thank you, Your Honors. Thank you, Ms. Linder. Ms. Scarr. Thank you. With regard to this meeting where the hostile remarks were made, Miss Birch asked Miss Baines what she wanted, and Miss Baines said she wanted a transfer to a different store. She had filed a discrimination complaint that related to the way the pharmacy was run there, and she asked for a promotion to senior pharmacy tech. Well, she got neither. So I think the reasonable inference from that is that Miss Birch really didn't intend to give her what she wanted. And when management makes hostile remarks in a meeting and no one contradicts them and they stand out there as intimidating, presumably to get someone to drop their EEOC complaint, it's fair to infer that those hostile remarks represented Walgreen's feelings and all of the management of Walgreen's. The evidence of dishonesty in this case allows, on Miss Birch's part, allows a jury to infer that Miss Birch was dishonest when she said she didn't remember the EEOC charges and that she was dishonest when she said she didn't make the hiring decision, she was dishonest when she said she didn't retaliate. That alone should allow this decision to be reversed. And finally, Miss Baines did not argue that pharmacy manager Reese got rid of the interview scores. She argued that the scores were missing and that was evidence that Walgreen's got rid of them. It doesn't matter if Miss Reese didn't know why she couldn't hire Miss Baines. She did what the district manager told her to do. And she herself didn't have to have the animus and she didn't have to get rid of the scores. They were in a computer system. So presumably others at Walgreen's had access to the computer system. Thank you. Thank you, Ms. Scott. Thank you, Ms. Linder. The case is taken under advisement and the court will stand in recess. Thank you.